UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH HARDESTY, *et al.*, | : | Case No. 1:16-cv-298 |
|     Plaintiffs, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| THE KROGER CO., *et al.*, | : | |
|     Defendants. | : | |

**ORDER DENYING DEFENDANTS'
MOTION FOR DECERTIFICATION (Doc. 47) AND
DENYING PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION (Doc. 55)**

This case is before the Court on the motion of Defendants to decertify Plaintiffs' FLSA collective action (Doc. 47) and the motion of Plaintiffs for class certification pursuant to Federal Rule of Civil Procedure 23 (Doc. 55).

## I. INTRODUCTION

This is a lawsuit seeking unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and Ohio law.

Plaintiffs were employed as Recruiters at Kroger's CoRE Center, which is a call center located in Blue Ash, Ohio, with over 300 employees.[1] The CoRE Center makes outbound calls to and receives inbound calls from online applicants who have applied for

---

[1] Defendants are Kroger G.O., LLC and The Kroger Co., Inc., collectively referred to here as "Kroger."

"Plaintiffs" refers to named Named Plaintiffs Joseph Hardesty, Derek Chipman, and Madeline Hickey. "Opt-In Plaintiffs" refers to the additional plaintiffs who have opted in to Plaintiffs' FLSA collective action.

employment at various Kroger-owned grocery and retail stores throughout the United States. Plaintiffs, as CoRE Recruiters, primarily made telephone screening calls to individuals who had applied online to Kroger-owned stores throughout the United States.

In 2014, Kroger made a single, uniform decision to classify all CoRE Recruiters as exempt under the FLSA. Plaintiffs commenced this lawsuit alleging that Kroger's classification decision was unlawful and that Plaintiffs were wrongfully not compensated for hours worked over 40 hours per week. Plaintiffs assert three claims against Kroger: (1) an FLSA violation premised on Kroger's misclassification of CoRE Recruiters and subsequent failure to compensate Plaintiffs for overtime hours; (2) a claim under Ohio's Minimum Fair Wage Standards Act, Ohio Revised Code §§ 4111.01, *et seq.*, for failure to timely pay those overtime wages, and (3) a claim for unjust enrichment.

Kroger argues that CoRE Recruiters are exempt from the FLSA's overtime provisions under the "Administrative Exemption," which exempts employees who are paid at or above a certain salary level and (1) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and (2) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200(a). Kroger argues, *inter alia*, that CoRE Recruiters exercise discretion when performing their duties by deciding which applicants to call for telephone interviews and determining which candidates to refer from telephone

2

interviews to final, in-store interviews.[2]

Plaintiffs seek class treatment of their claims. Because the certification methods for their FLSA claims and state law claims differ, there are two motions pending before the Court. First, Kroger has moved to decertify Plaintiffs' FLSA collective action previously conditionally certified by this Court on July 19, 2016, at Docket Entry 15. (Doc. 47). Second, Plaintiffs have moved for class certification of their state law claims under Federal Rule of Civil Procedure 23. (Doc. 55).

The primary issue in both motions is whether, in light of the fact that testimony from the Plaintiffs, Opt-In Plaintiffs, and proposed class-member declarants demonstrates that CoRE recruiters exercise varying amounts of discretion in performing their jobs, Plaintiffs' claims (and Kroger's individualized Administrative Exemption defenses) should be tried collectively. For the following reasons, the Court finds that Plaintiffs have not met the "commonality" requirement of Rule 23, but have met the less-stringent requirement under the FLSA that they be "similarly situated."

## II. ANALYSIS

### A. Plaintiffs' Motion for Class Certification.

Plaintiffs' motion for class certification (Doc. 55) requests that the Court certify their Ohio wage claims and approve notice to be sent to the following Ohio class: "All employees classified as recruiters, who i) were employed at Kroger's Center of

---

[2] On December 1, 2016, Kroger reclassified CoRE Recruiters as non-exempt in light of the Department of Labor's revision to FLSA overtime regulations which increased the salary level at which employees were eligible for the administrative exemption. (Doc. 62-9).

Recruiting Excellence ("CoRE") in Blue Ash, Ohio, at any time from the beginning of CoRE's operations in 2014 to December 1, 2016, and ii) worked in excess of forty (40) hours during any given workweek."

    1.    <u>Standard</u>.

Federal Rule of Civil Procedure 23 establishes a two-step analysis to determine whether class certification is appropriate. First, plaintiffs must satisfy <u>each</u> of the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Second, the action must satisfy at least one of the three subdivisions of Rule 23(b). *In re Retek, Inc. Sec. Litig.*, 236 F.R.D. 431, 434 (D. Minn. 2006).

    2.    <u>Rule 23(a)</u>.

The Court concludes that class certification is not proper under Rule 26(a) because Plaintiffs have not shown that their claims are capable of classwide resolution as required by the "commonality" requirement set forth in Rule 26(a)(2).

The Supreme Court has explained that Rule 26(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes v. Wal-Mart Stores, Inc.*, 131 S. Ct. 2541, 2551 (2011). Instead, the "claims must depend on a common contention" and "[t]hat common contention . . . <u>must be of such a nature that it is capable of classwide resolution</u>—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (emphasis added). What matters to class certification is not the raising of

common <u>questions</u>—even in droves—but the capacity of a classwide proceeding to generate common <u>answers</u> capable of resolving the litigation.  *Id.*

Multiple courts have held that the commonality requirement is not met when there are factual differences among class members that could affect the application of an exemption (or exemptions) relevant to overtime laws in misclassification cases.  *See Hendricks v. Total Quality Logistics*, *LLC*, 292 F.R.D. 529, 540-41 (S.D. Ohio 2013) (commonality not met when "the answers [to multiple exemption defenses] may vary from one [employee] to the next, especially with regard to . . . <u>how and when they exercise discretion in carrying out their duties</u>" (emphasis added);  *Novak v. Boeing Co.*, Case No. SACV 09-01011, CJC (ANx), 2011 U.S. Dist. LEXIS 146676, at ** 14-15 (C.D. Cal. Dec. 19, 2011) (commonality not satisfied when "[i]t is clear from the statements of these workers that they perform different amounts of exempt and non-exempt duties, have different levels of supervision, <u>employ different amounts of independent judgment and discretion</u>, work in different teams and environments, and have vastly different educational backgrounds") (emphasis supplied);  *Hughes v. Gulf Interstate Field Servs.*, Case No. 2:14-cv-432, 2015 U.S. Dist. LEXIS 88205, at ** 17-19 (S.D. Ohio July 7, 2015) (no commonality when "[t]he applicability of each of these exemptions involve fact-specific inquiries regarding an employee's specific job duties" including "the independent judgment exercise in the performance of said duties").

Here, Plaintiffs cannot satisfy the commonality requirement because there are numerous individual questions of fact among potential class members that could affect the application of the Administrative Exemption.  Specifically: there is conflicting

testimony from proposed class members regarding whether they exercise discretion in performing their duties as CoRE Recruiters, and if so, how much.

First, there is contradictory testimony regarding whether CoRE Recruiters exercised discretion in selecting applicants for a telephone interview. Ms. Hickey, Mr. Hardesty and Marye Ward testified that <u>they did not screen or evaluate applicants prior to scheduling telephone interviews</u>. (*See* Hickey Dep. at 89:21-90:16 ("From what I recall, I would talk with all the candidates, or attempt to"); Hardesty Dep. at 85:21-86:14 ("[W]e had in our system a little bucket called new applications. I called everybody in that bucket."); Ward Dep. at 29:6-30:15 (explaining there was no "decision to make of who fits best," and she "just start[s]" contacting applicants).

Kelly Rutledge, on the other hand, testified that for a period of time she was deciding which applicants to call by ranking them based on their criminal backgrounds, work history, ideal start date, and desired position. (Rutledge Dep. at 51:2-54:17). Ms. Rutledge testified that while she considered applicants' backgrounds in deciding who to call, other CoRE recruiters did not. (*Id.* at 53:20-54:17).

Corbin Hom testified that, in reviewing applications, he considered factors such as whether the applicants were in school, the positions they were interested in, and their availability. (Hom Dep. at 43:2-6). Mr. Hom decided to not call certain applicants with limited availability—effectively rejecting them—by "making the judgment that if somebody's in school their availability would be less and maybe not as attractive as somebody who's out of school." (*Id.* at 44:13-25).

6

Mr. Chipman testified that he exercised discretion in choosing whether or not to contact applicants for some positions, but not all, based on their work histories. (Chipman Dep. at 146:11-147:24).

Kimberly Burchett testified that during a portion the relevant class period, if there were multiple applicants she would "look at their qualifications and try to determine which of those would be the best fit, in [her] opinion." (Burchett Dep. at 32:19-24). During other portions of the relevant class period, she would "call whoever applied." (*Id.* at 62:12-23).

Multiple CoRE Recruiters submitted affidavits stating that, unlike Ms. Hickey, Mr. Hardesty, and Ms. Ward, they used discretion in determining which applicants to schedule for phone interviews, including screening an applicant's materials to determine fit. (Doc. 62-1 at ¶ 11; Doc. 62-2 at ¶ 5; Doc. 62-3 at ¶ 8; Doc. 62-4 at ¶ 11; Doc. 62-5 at ¶ 4; Doc. 62-6 at ¶ 7; Doc. 62-7 at ¶¶ 3-4; Doc. 62-8 at ¶ 3).

Additionally, there is contradictory testimony about the level of discretion CoRE Recruiters exercised in evaluating candidates during telephone interviews and deciding which candidates to forward on for final, in-store interviews.

During telephone interviews, Mr. Hardesty only asked candidates a few scripted questions. Mr. Hardesty never asked a follow-up question, as managers and trainers instructed him to "stay with the script." (Hardesty Dep. at 83:21-84-21). Mr. Hardesty typically scheduled candidates for interviews who gave "any kind of an answer that was halfway decent" to his questions. (*Id.* at 82:1-5).

7

Ms. Ward testified that, with the exception of some specialty positions, she did not use any discretion "whatsoever" in deciding which candidates to schedule for in-store interviews until she met her daily quota of scheduling 18 interviews, at which point, she could use discretion. (Ward Dep. at 34:17-35:5; 57:5-7). After Ms. Ward met her daily quota, she would "have time to actually care about what's going on" in regards to the candidates she was speaking with. (*Id.* at 55). Ms. Ward typically would select candidates for interviews unless they cussed at her. (*Id.* at 42-43).

On the other hand, Mr. Hom asked candidates two or three questions that were not on his script because he wanted to "learn a little more about them." (Hom Dep. at 38-39). Mr. Hom's goal was to refer "best fit" candidates to the store, meaning candidates that sounded enthusiastic with their answers on the phone, had appropriate availability, and had comparable work experience. (*Id.* at 21-23). Mr. Hom evaluated candidates he spoke with on the phone based on his "gut feeling" and "intuition;" he rejected candidates who answered his questions if he did not feel their answers demonstrated enthusiasm about customer service. (*Id.* at 23-26). Mr. Hom alone made the decision about whether candidates gave answers that were satisfactory enough to proceed to an in-store interview; and his decision was not reviewed by a superior. (*Id.* at 26).

Ms. Hickey testified that she was instructed to follow the script as closely as possible. (Hickey Dep. at 105:12-19). The level of discretion Ms. Hickey exercised in evaluating and referring candidates depended on the stores for which she was working. Pursuant to direction from her supervisors, for some stores Ms. Hickey would schedule for an interview every person she spoke with as long as they answered her questions.

8

(Hickey Dep. at 57, 58).  For stores where that directive was not in place, she would decide whether to refer candidates based on how they answered her questions, including whether they had a positive attitude.  (*Id.* at 59-61). Ms. Hickey alone determined whether she "felt they would be able to do the job."  (*Id.* at 61).

Mr. Chipman testified that whether to decline a candidate after a phone screen was his "decision to make," that he did not have to get the approval of a supervisor to turn a candidate down after a phone screen, that he "didn't have to schedule everyone" he spoke with, and that evaluating candidates entailed a "subjective analysis."  (Chipman Dep. at 178-181).

Multiple CoRE Recruiters submitted declarations stating that they exercised more discretion in how they evaluated candidates during phone interviews, and in deciding who to forward for in-store interviews, than Mr. Hardesty and Ms. Ward.  (Doc. 62-1 at ¶¶ 12-13; Doc. 62-2 at ¶ 6; Doc. 62-3 at ¶¶ 10-11; Doc. 62-4 at ¶ 12; Doc. 62-5 at ¶¶ 5-9; Doc. 62-6 at ¶¶ 8-10; Doc. 62-7 at ¶¶ 4-6; Doc. 62-8 at ¶ 4-5).

The testimony before the Court demonstrates that members of the proposed class exercised varying levels of discretion in performing their tasks as CoRE Recruiters.  In light of this varying and conflicting testimony, the common question of whether CoRE Recruiters were properly exempted from the FLSA due to the Administrative Exemption—*i.e.*, whether their primary duties included the exercise of discretion and independent judgment with respect to matters of significance—cannot be answered on a classwide basis.  Accordingly, Plaintiffs have not met the requirements of Rule 26(a).

3. Rule 26(b).

Even if Plaintiffs had satisfied Rule 26(a), Plaintiffs' motion would still not be well-taken as Plaintiff cannot meet the requirements of Rule 26(b).  Rule 26(b) requires a plaintiff to demonstrate the applicability of one of three pongs; Plaintiffs argue this lawsuit satisfies Rule 26(b)(3), which allows class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The predominance inquiry involves consideration of the same principles that guide the Rule 23(a) commonality analysis, such as the existence of common questions, but it is "even more demanding" than Rule 23(a)(2).  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 14432 (2013).  For the same reason Plaintiffs cannot meet the commonality requirement of Rule 26(a)(2), they cannot meet "more demanding" predominance requirement of Rule 26(b)(3).

Additionally, Rule 23(b)(3) requires the Court to consider, *inter alia*, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(C)-(D).  Plaintiffs claim their proposed class consists of 180 members.  (Doc. 55 at 30). Given the factual differences in the testimony from CoRE Recruiters relevant to the main legal issue in this case—whether CoRE Recruiters were properly exempted from the FLSA—the Court finds this class certification to be undesirable and unmanageable.

As Plaintiffs have not met the requirements of Rule 26(a) or Rule 26(b), Plaintiffs' motion for class certification (Doc. 55) is **DENIED**.

**B.     Kroger's Motion for Decertification.**

Also pending before the Court is Kroger's motion to decertify Plaintiffs' FLSA collective action, which was conditionally certified by this Court on July 19, 2016. Since the Court's granting conditional certification, 18 plaintiffs have opted in to Plaintiffs' FLSA lawsuit. (*See* Docs. 19-23).

Because collective actions under the FLSA are subject to a less stringent requirement than class actions under Rule 23, Kroger's motion is not well-taken.

1.     Standard.

The FLSA provides a private cause of action against an employer "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Similarly situated" persons are permitted to "opt into" the lawsuit. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The FLSA does not define "similarly situated," nor has the Sixth Circuit. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 576, 584 (6th Cir. 2009).

Most courts use a two-phase inquiry to address whether proposed co-plaintiffs are similarly situated. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011). First, in what is referred to as the "initial notice stage," the court must make an early determination whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members. *Id*. At the second stage, typically

at the close of discovery, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiffs' claims. *Id.*

At the second stage—this stage—courts typically consider three factors to determine whether the plaintiffs are similarly situated: (1) the factual and employment settings of the individual plaintiffs, (2) the different defenses to which the plaintiffs may be subject on an individual basis, and (3) the degree of fairness and procedural impact of certifying the action as a collective action. *O'Brien*, 575 F.3d at 584. Courts also consider whether plaintiffs suffer from a single, FLSA-violating policy, and whether their claims are unified by common theories of defendants' statutory violations. *Id.* Crucially, the determination of whether plaintiffs are similarly situated under the FLSA is less stringent than the determination of whether individualized questions predominate in a Rule 23 analysis. *Id.* ("The district court implicitly and improperly applied a Rule 23-type analysis when it reasoned that the plaintiffs were not similarly situated because individualized questions predominated. . . . This is a more stringent standard than is statutorily required.").

        2.    <u>Kroger's' motion to decertify (Doc. 47) is not well-taken</u>.

The first prong weighs in favor of Plaintiffs because their claims have similar factual and employment settings. Initially, their claims arise from a single, uniform decision—Kroger's 2014 decision to classify <u>all CoRE Recruiters</u> as exempt from the FLSA. Plaintiffs' claims are also unified by a common theory: that Kroger's classification decision violated the FLSA. The evidence before the Court is that Plaintiffs have similar job descriptions and training, and that they spent most, if not all, of their

12

time performing the same primary duties: (1) reviewing applications, (2) conducting phone screens, and (3) scheduling applicants for in-store interviews.

The second prong weighs in favor of Kroger because Kroger intends to assert individualized defenses. Specifically, Kroger claims CoRE Recruiters are exempt from the FLSA due to the Administrative Exemption. Kroger argues these defenses will be difficult to present in a collective action as CoRE Recruiters provided inconsistent testimony pertaining to a key issue in the Administrative Exemption analysis: whether (and how much) discretion they exercised in performing their duties.

While this factor weighs in Kroger's favor, the Court does not agree with Kroger that it mandates decertification. Unlike Rule 23, plaintiffs are similarly situated for purposes of the FLSA when "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585 (emphasis supplied). Kroger's individualized defenses are not enough, on their own, to warrant decertification: "[s]everal circuits, including our own, hold that individualized defenses alone do not warrant decertification where sufficient common issues or job traits otherwise permit collective litigation." *Pierce v. Wyndham Vacation Resorts, Inc.*, No. 3:13-cv-641-CCS, 2017 U.S. Dist. LEXIS 163529, at * 36 (E.D. Tenn. Oct. 3, 2017) (citation omitted).

Finally, the third prong weighs in favor of Plaintiffs because allowing this case to proceed as a collective action is both fair and procedurally appropriate. To the extent Kroger complains about the burden of presenting individualized defenses in this collective action, that burden is a direct result of its own decision to uniformly classify all

13

CoRE recruiters as exempt from the FLSA. If CoRE recruiters were similarly situated enough for Kroger to uniformly exclude all of them from the FLSA's overtime provisions, they are similarly situated enough for Kroger to defend that decision (against a collective much smaller than Plaintiffs' proposed Rule 23 class) in this collective action.

Because the first and third prongs weigh in favor of maintaining this collective action, and because the second prong is insufficient by itself to warrant decertification, Kroger's motion to decertify Plaintiffs' FLSA collective action (Doc. 47) is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (Doc. 55) is **DENIED** and Kroger's motion for decertification of Plaintiffs' collective action (Doc. 47) is **DENIED**.

Also pending before the Court is Plaintiffs' motion to vacate the discovery deadline (Doc. 70), which was previously scheduled for November 17, 2017. Plaintiffs wish to extend the discovery deadline for the purpose of conducting any discovery that might be necessary after class certification. As the Court denied Plaintiffs' motion for class certification, their motion to vacate the discovery deadline (Doc. 70) is similarly **DENIED**. The Court will schedule a status conference forthwith, at which point both parties may address the need for additional discovery, if desired.

**IT IS SO ORDERED.**

Date: 9/28/18

*Timothy S. Black*
Timothy S. Black
United States District Judge