# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **JOSEPH HARDESTY, ET AL.,** : | Case No. 1:16-CV-00298 |
| Individually and on behalf of All : | |
| Others Similarly Situated : | Judge Timothy Black |
| : | |
| Plaintiffs, : | |
| : | **PLAINTIFFS' REPLY IN SUPPORT** |
| v. : | **OF MOTION FOR PARTIAL** |
| : | **SUMMARY JUDGMENT** |
| **THE KROGER CO., et al.** : | |
| : | |
| Defendants. : | |

Nothing in Kroger's opposition rebuts the substantial evidence that all Plaintiffs in this collective action had the same primary job duties of (1) reviewing applications, (2) performing phone screens, and (3) scheduling interviews ("screening and scheduling") in Kroger's CoRE call center. And despite the fact that Kroger, as the employer, bears the burden of proof in establishing its sole affirmative defense (the FLSA's administrative exemption), Kroger <u>never</u> explains how such screening and scheduling duties satisfy the FLSA's extensive regulatory requirements as to what constitutes "discretion and independent judgment <u>with respect to matters of significance</u>[,]" because they do not satisfy such requirements. In fact, Kroger fails and avoids citing the definitions, limitations, and the ten-factor test to be utilized in determining whether an individual is an exempt administrative employee under the FLSA. Unfortunately for Kroger, those regulations have the force of law, and it is clear from reviewing them that Kroger has simply not met, and cannot meet, its burden. As such, summary judgment is appropriate.

## I. Kroger has not established disputed issues of material fact as to Plaintiffs' primary job duty.

Determining an employee's "primary duty" is the first step finding whether that duty, as a matter of law, meets all elements of the administrative exemption. That initial determination is

controlled by factors set forth in 29 CFR § 541.700, including whether the task encompasses over 50% of the employee's time or, although requiring a lesser amount of time, is nevertheless of such importance to the employee's position that it can be considered the "primary duty." *Id.*

From the outset, Kroger does not dispute that Plaintiffs' "primary duty" included the same three tasks asserted by Plaintiffs: (1) reviewing applications; (2) performing phone screens; and (3) scheduling applicants for in-store interviews. *See* Memo in Opp., pg. 3, 15. Instead, Kroger attempts to manufacture a dispute through a two-step approach: First, by rephrasing Plaintiffs' primary duties as "identifying and selecting best-fit candidates for in-store positions;" Second, by using this redefined duty to include other undefined and vaguely worded tasks. As Kroger states:

> The primary job duty of CoRE recruiters is to identify and select best-fit candidates for Kroger supermarket locations. Recruiters do this by performing a number of tasks, including reviewing candidate applications and background information to determine which candidates to contact, performing telephone interviews to assess whether a candidate is a best fit for a particular role, scheduling best-fit candidates for final in-store interviews, directly communicating with hiring managers regarding candidates and the recruiting process, developing novel approaches to solving various recruiting-related problems, and improving upon various recruiting-related practices.

(Memo in Opp. P. 3, 28).

Kroger's attempt to create factual issues through simple rephrasing is not sufficient to meet its burden on summary judgment. Plaintiffs have presented substantial, uncontroverted evidence that they all spent the vast majority of their days screening applicants and scheduling interviews, and that these were the most important duties a recruiter performed. If Kroger intends to dispute such duties or assert that additional duties were "primary," they need to come forward with specific evidence to support them. Consistent with the fact that there is no such evidence, Kroger presents none, making summary judgment appropriate.

**A. Kroger's assertion that Plaintiffs' primary duty was identifying and selecting "best-fit" candidates for in-store interviews is a phrase with no actual meaning.**

Kroger's attempt to redefine Plaintiffs' primary duty as "identifying and selecting 'best-fit' candidates" is its first problem. Specifically, the record makes clear that identifying and selecting "best-fit" is nothing more than an exaggeration of Plaintiffs' undisputed screening and scheduling duties. Indeed, Kroger explains in opposition that "CoRE's policy was to give recruiters unfettered discretion to evaluate job candidates based on their application materials and performance during the telephone interview[,]" and that "[b]ased on this evaluation, recruiters had the authority to decide whether to recommend the candidate for a final, in-store interview." Memo in Opp. pg. 15 (emphasis added). In other words, what Kroger calls identifying and selecting "best-fit" candidates actually involves nothing more than reviewing an application, conducting a phone screen, and a scheduling an in-store interview.

Moreover, Kroger's failure to clarify what "best-fit" means is telling. Even though Kroger claims that Plaintiffs were to only select "best-fit" candidates for in-store interviews, Kroger also repeatedly insists that it **"did not provide criteria by which candidates were evaluated[,]"** and that the "judgment of whether to select a candidate for an in-store interview . . . was left to the sole discretion of the recruiter." Memo in Opp. pg. 4 (emphasis in original). And if this were not confusing enough, Kroger later disparages Plaintiffs who scheduled interviews for candidates who passed an application review and provided minimal answers to screening questions, claiming that this "goes against all of the training CoRE recruiters received, all directions from CoRE management regarding how recruiters were to perform their jobs, and the very reason CoRE exists, which is to find best-fit candidates for in-store positions." Memo in Opp. pg. 16.

The testimony of Courtney Strosnider (Mass Hire Supervisor) further highlights this contradiction. In a Kroger-submitted declaration, Strosnider claims that "[w]henever I spoke to my employees as a recruiting supervisor, I emphasized that the most important part of their job was

finding quality candidates for Kroger positions." *See* Doc 62-7, ¶ 9. But when asked about the quality

of answers during a phone screen, Strosnider indicated that it was perfectly acceptable for a recruiter

to schedule an applicant who stated "I just do" in response to why they want to work for Kroger:

> Q.      Does that mean – I mean, was there no minimum answer that had to be given? [by the applicant during a phone screen]
>
> A.      Technically no. I mean, <u>I could ask you why do you want to work for Kroger. You could say I just do and the recruiter could send that person through.</u> There's no – it's really completely up to them.
>
> Q.      Okay. That's okay though, if a recruiter does that?
>
> A.      I mean, again, it's recruiter discretion. Would I personally think that's a – would you probe more? I would think yes. But it's – that – I wouldn't say that that's how people are trained, to take a one-word answer and move forward. But at the end of the day that's – they were hired to be recruiters so –
>
> Q.      Okay I mean so they – it seems like you're kind of going back and forth, but could they do that? I mean can a recruiter do that?
>
> A.      <u>Yes, they could do that if they wanted to.</u>

(Strosnider Dep. 73:21-74:20)(emphasis added).

Given these contradictions, it is clear that the phrase "best-fit" has no significant meaning,

and is certainly not an indicator of exempt status. On that point, context is important. Plaintiffs

work in a call center reviewing online job applications for entry-level Kroger grocery store

positions (i.e. baggers, cashiers, deli clerks, etc.), and calling applicants to schedule interviews for

each open position. Given Kroger's claim that it had <u>no criteria</u> by which applicants were

evaluated, it is perfectly understandable (and beyond dispute) that recruiters performing this task

would do nothing more than confirm that an applicant met a store's minimum qualifications (age,

criminal background, rehire status, etc.), that they had availability which met the store's needs,

and that they were able to minimally answer three routine screening questions provided by Kroger

on a script that were to be read verbatim. That is especially the case when those same employees

are expected to schedule at least 18-20 interviews per day, 90-100 interviews per week (according to Kroger), meaning that a Recruiter would have no more than 24 minutes per applicant (assuming all applicants reviewed are scheduled).[1] *See* Memo in Opp. Exhibit B (Kanitz Dec. ¶ 7), Exhibit C (Walker Dec. ¶ 7), Exhibit D (Schluneker Dec. ¶ 8), Exhibit E (Williams Dec. ¶ 5); Exhibit F (Mathis Dec. ¶ 8-9).

**B. Kroger's attempt to equate its undefined "best-fit" primary duty to the facts in *Perry* is unfounded.**

Kroger also uses the term "best-fit" because it improperly assumes that phrase makes Plaintiffs exempt based upon the holding in *Perry*. *See* Memo in Opp. pg. 27 ("Kroger has offered evidence establishing that Plaintiffs' primary duty was identifying and selecting best-fit candidates…The Sixth Circuit has recently confirmed that employees whose primary duty involved comparing applicants to determine best fit satisfies the administrative exemption."). This of course ignores the FLSA's long-standing principle that job titles or phrases are not dispositive or even relevant to the administrative exemption analysis; rather, an analysis of the employee's exempt status should be determined on the basis of the employee's primary duties. *See* 29 CFR § 541.2; *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 644 (6th Cir. 2013).

Kroger's assumption also ignores the underlying facts of *Perry*, in which the exempt Account Managers performed far more extensive and significant tasks than screening and scheduling applicants. *Perry v. Randstad Gen. Partner (US)* LLC, 876 F.3d 191 (6th Cir. 2017).

---

[1] Kroger additionally argues (for the first time) that recruiters could easily meet these minimum scheduling requirements through "tickets," which constituted a store hiring an applicant with no recruiter involvement. Memo in Opp. pg. 19. However, Kroger's fails to reference anything in the record for support, other than two recently filed management declarations. Moreover, even assuming these "tickets" are true, it is further evidence that the local hiring manager had the absolute discretion to decide who to hire for its store without any recruiter involvement or recommendations. It is beyond dispute that Plaintiffs' screening and scheduling duties did not involve meaningful discretion and independent judgment where they never even spoke with half the applicants they scheduled for interviews.

The *Perry* Account Managers worked for a staffing company which recruited temporary workers (talent), and hired those workers out to other companies (clients). *Id.* at 194. The positions for which they recruited included various administrative roles such as receptionist, payroll, and administrative assistant. *Id.* at 200. Account Managers would attend job fairs, post on and search social media and career-focused web sites, independently draft job descriptions, conduct both a phone screen and an in-person interview, decide which recruitment tools to use, negotiate how much to pay the worker and how much to bill the client, counsel workers who have been placed, and deal with unsuccessful placements. *Id.* at 201, 207-208. They not only matched the required criteria for the position, they also matched the differing corporate culture of their employer clients. *Id.* at 204.

The tasks set forth in *Perry* are a far cry from working in a call center, reviewing online applications, performing scripted phone screens, and scheduling in-store interviews for the same entry-level, hourly positions over and over for the same corporate employer, Kroger, based upon factors such as "availability" and "interest." *See* Schiff 30(b)(6) Dep. Exhibit 6 (recruiter corporate job profile)("Screen candidate applications using best-fit criteria such as availability and behavioral assessment; Conduct phone screens to confirm interest and availability and share information about the position."). *Perry* does not establish that Plaintiffs' "primary duties" are subject to the administrative exemption.[2]

_____

[2] Kroger also briefly references *Andrade v. Aerotek, Inc.*, 700 F. Supp.2d 738, 747 (D. Md. 2010) as an analogous case. Similar to *Perry*, *Andrade* is completely disinguishable. In particular, the *Andrade* plaintiff's primary duty was to find and place financial services professionals in contract positions at Aerotek's financial services clients. *Id.* at 741. The plaintiff would identify candidates through job boards, track her own personal "pipeline" of contractors, conduct both an initial phone call and in-person interview, and would obtain and call references to confirm employment history and work performance. *Id.* After selecting candidates, the plaintiff would submit resumes together with a "submission statement" describing the candidate, and would "advocate" that certain candidates be hired over others. *Id.* at 741-742. The plaintiff would also negotiate pay with candidates, manage the contract employees while on assignment,

## C. Kroger fails to discredit Plaintiff's evidence regarding the identification of Plaintiffs' primary duty.

What *is* clear from the record (and what Kroger fails to dispute) is that all Plaintiffs were primarily required to review applications, perform phone screens, and schedule interviews. These are the exact duties set forth in Kroger's training documents, which provide detailed instructions to Recruiters in performing such tasks, and indicate that these three tasks are a recruiters' "three main duties." *See* Schiff Dep. Exhibit 12 (Module 1: Process Overview and Job Requisitions, 54 pages); Exhibit 13 (Module 3: Job Application Reviews and Candidate Rankings, 54 pages); Exhibit 14 (Module 4: Phone Screens and Interviews, 20 pages); Exhibit 15 (Script Expectations, Script Sections, Voicemail/Inbound Call Greetings, 14 pages). They are also the same tasks emphasized in Kroger's job description, which indicates that a recruiter will "assess and screen applications, conduct phone screens, prepare interview packages, and present stores with a qualified slate of applicants." *See* Moffett Dep. Exhibit 1; Schiff 30(b)(6) Dep. Exhibit 6. And they are the same duties that every Plaintiff testified to primarily performing as a Recruiter, which were confirmed by Kroger's management. Hardesty Dep. 174:25-175:6; Whitlow Dep. 15:14-17; 16:6-11; Chipman Dep. 82:24-83:6; Hickey Dep. 47:18-21; Rutledge Dep. 121:14-16; Taske Dep. 54:21-55:2, 78:21-79:2; Ward Dep. 18:6-11; Hom Dep. 52:24-53:15; Victoriano Dep. 17:9-18:15.

In an effort to downplay its own training documents, Kroger asserts that these documents were simply explanations of "how Kroger's electronic data systems worked and how to use those systems." Memo in Opp., pg. 4. First, that notion is completely contradicted by Kroger's own testimony:

> Q.    Can you tell me why Exhibit Number 13 [application review powerpoint] was created?
> A.    Training new hires

---

assess and investigate contractor related problems, and administer performance counseling, coaching, and disciplinary measures when necessary. *Id.* at 742.

| Q. | And when you say, training new hires, that would include all recruiters that were hired at CoRE? |
| --- | --- |
| A. | Yes. |
| Q. | Is Exhibit Number 13 still being used today? |
| A. | . . ., it's a variation of the information but similar information. |
| Q. | It may be presented in a slightly different format, but it's the same content; is that correct? |
| A. | I believe so, yes. |
| | […] |
| Q. | And what would Exhibit 14 [phone screen powerpoint] have been used for? |
| A. | Training of new recruiters of [sic] the phone screening interviews. |
| Q. | And Exhibit Number 14 was used to train all recruiters that came to work at CoRE; is that right? |
| A. | Yes. |

Schiff 30(b)(6) Dep. 105:14-106:3; 122:21-123:3.

Second, even a cursory review of the hundreds of pages of training documents (*See* Schiff Dep. Exhibits 11-16) makes clear that they are in fact detailed, step-by-step instructions to recruiters as to reviewing applications, performing phone screens, and scheduling interviews. Indeed, the very fact that they are labeled as training "modules" makes clear that they are far more than simple explanations of data systems.

Finally, despite Kroger's attempt to discount its training where it hurts them, Kroger <u>relies</u> on that same training throughout its opposition to falsely claim that Plaintiffs were trained to exercise "discretion and independent judgment."[3] *See* Memo in Opp. pp. 4, 11, 16, 29, 33, 35. Kroger cannot avoid summary judgment by claiming its training is nothing more than an explanation of data systems, when it extensively relies on the same documents to oppose liability.

Beyond the training documents, Kroger also fails to rebut the other evidence that Plaintiffs offered to show that the recruiters' primary duty was screening and scheduling, including (1)

---

[3] The phrase "discretion and independent judgment" is found nowhere in Kroger's training documents. Rather than explaining and discussing what the phrase actually means, Kroger effectively assumes the conclusion and simply asserts that the tasks and instructions set forth in its training documents constitute "discretion and independent judgment."

Kroger's phone records indicating that Plaintiffs spent approximately 80-90% of their time on phones available for calls; (2) Kroger's job description's emphasis on screening candidate applications and conducting telephone screens; (3) testimony from Buck Moffett, who indicated that he decided to classify Recruiters based upon his "overall vision" that Recruiters would forward candidates via a "phone screen;" (4) Kroger's own 30(b)(6) testimony conceding that the "three main duties" set forth in training documents (review candidate applications, perform phone screens, schedule interviews) applied to all Recruiters; and (5) the consistent testimony from all Plaintiffs and Kroger management emphasizing the importance of "phone screening candidates," "making outbound calls," "taking inbound calls," and "scheduling interviews." Doc. 76, pg. 5.

As to the phone records, Kroger implies that this data showing time spent on the phones cannot be used to establish Plaintiffs' primary duty because "recruiting time" simply means that the recruiter is in the loop available to receive incoming calls from candidates, and that they can perform other tasks during that time. Memo in Opp. pg. 21. Even assuming that is true, Kroger fails to explain what those other tasks are, how often they are performed, and whether they constitute exempt work. Moreover, even if Plaintiffs performed some other minor tasks during down time, Kroger does not dispute that Plaintiffs were required to remain in this phone loop at all times unless they were away from their desk, and that if an applicant called the general line, they were required to stop any other task they were doing and answer it. Moffett Dep. 136:15-25 (recruiters were required to be in the phone loop and available to answer calls unless they were engaged in an activity away from their desk or actively engaged with another candidate).

Once again, if Kroger truly intends to dispute the fact that Plaintiffs spent the vast majority of their time screening and scheduling candidates and that this was their most important (i.e., "primary") duty, they need to come forth with specific record evidence to the contrary. They

simply have not done so.

**D. Kroger's attempt to insert additional duties into the CoRE recruiters' primary duty does not affect the inapplicability of the administrative exemption.**

As noted previously, Kroger attempts to supplement Plaintiffs' undisputed primary duties with the undefined tasks of "directly communicating with hiring managers[,]" "developing novel approaches[,]" and "improving upon recruiting related practices." Kroger fails to describe how much time Plaintiffs spent on these tasks, what these additional tasks entail, the primary importance of such tasks, or, most importantly, whether such tasks involve the exercise of discretion and independent judgment with respect to matters of significance.

In fact, Kroger's only support for the potential remote existence of additional undefined tasks is a brief reference to its prior motion for decertification, in which they argued that such minor additional tasks warrant decertification. *See* Memo in Opp., pg. 8 (citing Doc. 47, pp. 13-17). However, as Plaintiffs made clear in opposition, it is the <u>primary</u> duty of Plaintiffs that matter for purposes of the administrative exemption, not various temporary or minor tasks performed from time to time. *See* Doc. 59, pp. 11-27; Doc. 65, pp. 6-13. And on that point, the record provides substantial, compelling evidence (much of which is set forth above) that all Plaintiffs had the same <u>primary</u> duties of reviewing applications, performing phone screens, and scheduling in-store interviews. *Id.* Kroger made no effort to respond to this evidence on decertification, and again fails to do so here.

Finally, Kroger's concession that Plaintiffs' screening and scheduling tasks are encompassed within their primary duty makes these purported additional tasks irrelevant for purposes of summary judgment. As set forth above, Plaintiffs have presented unrefuted evidence that their screening and scheduling tasks (1) encompassed the majority of Plaintiffs' work and (2) were the most important tasks a recruiter performed. Thus, even assuming Kroger could show that

its purported additional tasks constitute exempt work (they cannot), this makes no difference if Plaintiffs' spent the majority of their work day performing their most important <u>non-exempt</u> screening and scheduling tasks. *See* 29 CFR § 541.700

Given the lack of a dispute as to Plaintiffs' screening and scheduling duties, the question as to whether those duties constitute exempt work becomes a legal one entirely appropriate for summary judgment. *See Lutz v. Huntington Bancshares*, 2014 U.S. Dist. LEXIS 86435 at *17 (S.D. Ohio 2014 ("although the parties characterize Plaintiffs' job responsibilities differently, the facts regarding the scope of Plaintiffs' job responsibilities are undisputed. As such, the question of whether Plaintiffs are properly classified as exempt administrative employees is a question of law for the Court."); *Jastremski v. Safeco Ins. Cos.*, 243 F. Supp.2d 743, 747 (N.D. Ohio 2003) ("how an employee spends his time is a question of fact," but "the question of whether his activities fall within an exemption is a question of law.");

II.     **It is Kroger's burden to establish that Plaintiffs' primary duties meet all elements of the administrative exemption, and Kroger's complete failure to do so warrants summary judgment.**

Kroger makes repeated conclusory statements that Plaintiffs exercised complete "discretion and independent judgment" in "evaluating job candidates based on their application materials and performance during the telephone interviews," and that "based on this evaluation, Plaintiffs had the authority to decide whether to recommend the candidate for a final in-store interview." In doing so, Kroger improperly assumes <u>without any reference to FLSA regulations</u> that reviewing applications, performing phone screens, and scheduling in-store interviews constitutes the exercise of "discretion and independent judgment with respect to matters of significance." *See* 29 CFR § 541.202(a)-(e).

Unfortunately for Kroger, "discretion and independent judgment" is a legal term of art; it

has a well-defined regulatory meaning under the FLSA, which is to be given "the force and effect of law." *See Cowan v. Treetop Ents., 120 F.Supp.2d 672, 687 (M.D.Tenn.1999) citing Batterton v. Francis,* 432 U.S. 416, 415 n.90 (1977). Thus, Kroger must do more than assert its own conclusory opinions to avoid liability. *See Stultz v. J.B. Hunt Transp.,Inc.*, 35 F. Supp.3d 866 (E.D. Mich 2014)("[T]he words 'discretion and independent judgment' are words with a legal meaning and the opinions of Mr. Mumm and Mr. Noland on whether Plaintiff's scrap auditor function qualifies are, of course, not binding on the court."); *Mohorn v. TVA,* 2007 U.S. Dist. LEXIS 52014 at *17-18 (E.D. Tenn. 2007)("While the RadCon supervisors perform a function of importance at SNP…their primary duties are not of the type and kind that demonstrate discretion and independent judgment as those terms are understood to mean within the context of the FLSA."); *Beauford v. ActionLink, LLC*, 781 F.3d 396, 404 (8th Cir. 2015)("Almost all employees possess some discretion in their daily work, but employees qualify for the administrative exemption only when that 'discretion and independent judgment is real and substantial, that is, they must be exercised with respect to matters of consequence.'").

### A. The standard an employer must meet to satisfy the administrative exemption is found in 29 CFR § 541.202(a)-(f).

As indicated in Plaintiffs' motion (and completely omitted from Kroger's opposition), DOL regulations define the exercise of "discretion and independent judgment" as "the <u>comparison</u> and <u>the evaluation</u> of <u>possible</u> courses of conduct, and <u>acting or making a decision</u> after the <u>various possibilities</u> have been considered." 29 CFR § 541.202(a) (emphasis added). Such discretion and independent judgment must be exercised "with respect to matters of significance," which refers to "the level of importance or consequence of the work performed." *Id*.

As further clarification, 29 CFR § 541.202(b) provides a ten-factor test in determining whether employees exercise discretion and independent judgment with respect to matters of

significance. Kroger fails to even mention, much less apply any of these factors, despite their clear relevance. *See, e.g., Perry*, 876 F.3d at 216 (citing 29 CFR § 541.202(b)) ("this court must consider several '[f]actors…when determining whether an employee exercises discretion and independent judgment with respect to matters of significance.'"); *Cameron v. Abercrombie & Fitch Co.*, 2012 U.S. Dist. LEXIS 131557 at *20-21 (S.D. Ohio 2012) (In reviewing 29 CFR § 541.202(b) factors, court found that defendant did not present evidence to meet half of them).

Kroger's failure to address these factors is easy to understand; Plaintiffs' screening and scheduling duties meet none of them. Plaintiffs' sole authority was to decide whether to schedule an applicant for an in-store interview through Kroger's established centralized recruiting process. Plaintiffs did not formulate, affect, interpret, or implement this process—they simply executed the policies on which they were trained. *See Gainor v. Optical Soc. of Am., Inc.,* 206 F. Supp. 3d 290, 304 (D.D.C.2016) (finding that defendant had not established that Gainor had authority to formulate or affect policy, as opposed merely to implementing policy decisions made by others.).

Kroger also presents no evidence that Plaintiffs carried out major assignments in conducting the operations of the business. Rather (as discussed above) Plaintiffs were simply involved in the initial screening process. After that initial stage, the local hiring manager would perform the actual interviews of the scheduled applicants, make a hiring decision from the group, conduct onboarding, and discipline or terminate the selected candidate if necessary. Such a minimal screening process, performed at least 18-20 times per day, 90-100 times per week, is not the carrying out of such a major assignment. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed. Appx. 349 (5th Cir. 2015)("[W]hile the plaintiffs' services may *relate* to business operations…Oil Inspections has not demonstrated that mere observation and inspection constitutes *carrying out* operations.").

Next, Kroger presents no evidence that Plaintiffs were authorized to waive or deviate from Kroger's established centralized recruiting process or other CoRE procedures. As indicated in Kroger's training documents, the process specific to recruiters was to review a candidate's application, phone screen the candidate, and schedule an interview. *See* Schiff 30(b)(6) Dep. Exhibit 12, pg. 5). Recruiters executed this process in the same way, scheduling multiple interviews for each open position. As with the other factors, Kroger presents no evidence that Plaintiffs could deviate from this screening procedure in any meaningful way. *See Boyd v. Bank of Am. Corp.*, 109 F. Supp.3d 1273, 1297 ("[W]hile appraisers may have to consider issues beyond established guidelines, they generally do not have the authority to 'waive' or 'deviate from' established policies and procedures without prior approval.").

As to the remaining factors, Kroger presents no evidence to establish any of them, including evidence that Plaintiffs (1) had authority to negotiate and bind the company on significant matters, (2) planned long- or short-term business objectives, (3) investigated or resolved matters of significance on management's behalf, or (4) represented the company in handling complaints, arbitrating disputes, or resolving grievances. It is Kroger's burden to present evidence establishing these factors, and their failure to do so warrants summary judgment.

Kroger also fails to address the additional regulatory examples of work which <u>does not</u> constitute the exercise of "discretion and independent judgment," including (1) the use of skill in applying well-established techniques, procedures or specific standards described in manuals and other sources, and (2) clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. *See* 29 CFR § 541.203(e). It is clear from the record that these regulatory limitations are the exact kind of work Plaintiffs performed. Plaintiffs followed a specific recruiting procedure provided by Kroger in training, followed a routine

recruiting script (also provided by Kroger), scheduled applicants based upon Kroger's directions (at least 2 per position opening), and performed this task on a repetitive, recurrent basis. Even assuming this work requires some discretion in the general sense, it does not constitute the exercise of discretion and independent judgment as that term is defined under the FLSA. *See Ahle v. Veracity Research Co.*, 738 F.Supp.2d 896, 907 (D.Minn.2010)("Admittedly, claims investigators do make decisions regarding the precise manner in which they conduct an investigation…however, such decisions are more appropriately viewed as choices among 'established techniques, procedures or specific standards described in manuals or other sources.'").

### B. Kroger fails to distinguish the pertinent regulatory example set forth in 29 CFR § 541.203(e) from the facts of this case.

The regulatory example set forth in 29 CFR § 541.203(e) (distinguishing between employees who create policies and make hiring decisions, from nonexempt employees who screen applicants and submit them to a manager for review) further warrants the conclusion that screening and scheduling duties do not constitute exempt work. Unlike its silence on the other pertinent regulations, Kroger briefly acknowledges this example but very simply (and wrongly) argues that it is inapplicable because employees cannot be categorized into one of two groups. Obviously, this is incorrect—the entire point of the administrative exemption is to determine whether employees are properly classified as (1) exempt; or (2) non-exempt. 29 CFR § 541.203(e) provides an example specific to the recruiting context, and explains what duties make such an employee exempt / non-exempt. Indeed, the regulation applies directly to situations like this one, where employees labeled as "recruiters" are screening job applications for minimum qualifications, confirming "potential fit" through a phone screen, and submitting multiple applicants to a hiring manager to select from. Multiple courts (including the Sixth Circuit) directly refer to this regulation in determining whether such tasks constitute exempt work. *See, e.g., Perry*, 876 F.3d at 198; *Sierra v. New Egn. Pers. Of*

*Harford, LLC*, 2017 U.S. Dist. LEXIS 137667 at *11-13 (D. Conn. 2017); *Ogden v. CDI Corp.*, 2010 U.S. Dist. LEXIS 66686 at *13-14 (D. Ariz. 2010).

Kroger also argues that because Plaintiffs did more than merely reject applicants who do not meet minimum qualifications, they are nothing like the "personnel clerks" in the regulatory example. This argument not only confirms Plaintiffs' position that Recruiters <u>do</u> primarily screen for minimum qualifications, it completely ignores the regulation's additional reference to screening applicants for "fitness for employment," a task which is also explicitly non-exempt. *See* 29 CFR § 541.203(e)("personnel clerks who 'screen' applicants to obtain data regarding their minimum qualifications <u>and fitness for employment</u> generally do not meet the duties requirements for the administrative exemption.").

### C. Kroger has failed to establish that Plaintiffs' screening and scheduling duties were exercised with respect to matters of significance.

Finally, Kroger makes little to no attempt to rebut Plaintiffs' evidence that their duties were not exercised <u>with respect to matters of significance</u>. Kroger's only response (Memo in Opp. pp. 30-31) is essentially a claim that some Plaintiffs "admitted" that their jobs were important to Kroger. But as set forth above, the opinions of employees or employers else is not determinative of the administrative exemption. *See also Boaz v. Fed. Express Corp.*, 107 F. Supp.3d 861 (W.D. Tenn. 2015)("An employee's subjective belief that her position was exempt from the FLSA does not mean the position was exempt as a matter of law."). Rather, it is the regulations which control, and they provide both a definition of matters of significance ("the level of importance or consequence of the work performed.") and ten factors to review. Kroger makes no effort to establish that Plaintiffs meet that definition, and thus have not met their burden.

### III. This Court's class certification decision does not preclude summary judgment.

Despite being under an entirely separate procedural rule, Kroger also wrongly argues that

this Court's prior certification denial of a class of 200 or more employees prevents this Court from granting summary judgment to the 27 member FLSA collective. This not only ignores the clearly differing legal standards between Rule 23, FLSA collective actions, and Rule 56, but also omits the key fact that this Court maintained certification of the FLSA collective, making a grant of summary judgment on behalf of them entirely appropriate. *See Monroe v. FTS USA, LLC* 860 F.3d 389, 408 (6th Cir. 2017)("In FLSA cases, the use of representative testimony to establish class-wide liability has long been accepted.").

First, it should go without saying that a certification decision under Rule 23 is not a decision on summary judgment, nor is it a final decision. Rule 23 is a procedural tool utilized to determine the sustainability of a class action at any point in the case prior to final judgment. It "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Products, Inc. v. Windsor*, 568 U.S. 455, 466 (1997). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* It also explicitly provides that a court may alter or amend its certification decision at any point prior to final judgment. Fed. R. Civ. P. 23(c)(1)(A).

On summary judgment, however, a court is explicitly tasked with inquiring into the merits of the case by reviewing the parties' evidence and determining whether genuine issues of material fact exist. And in this case, with the administrative exemption being the only defense to liability, Kroger has the burden of establishing that such genuine disputes exist as to each element of the exemption. Given Kroger's failure to do so, summary judgment in favor of the 27 member FLSA collective is appropriate regardless of whether the 200-member class was certified.

Second, Kroger entirely omits the portion of this Court's certification order regarding the FLSA claims (i.e., the claims relevant to this motion). On those claims, this Court found that

Plaintiffs were sufficiently similarly situated to maintain their FLSA action on a collective basis, based upon evidence that "Plaintiffs have similar job descriptions and training, and that they spent most, if not all, of their time performing the same primary job duties: (1) reviewing applications, (2) conducting phone screens, and (3) scheduling applicants for in-store interviews." Under Sixth Circuit precedent, such a finding permits Plaintiffs to testify as representatives of one another in order to establish liability. *See Monroe v. FTS USA, LLC*, 860 F.3d 389, 408 (6th Cir. 2017) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1280 (11th Cir. 2008) ("[f]or the same reasons that the court did not err in determining that the Plaintiffs were similarly situated enough to maintain a collective action, it did not err in determining that the Plaintiffs were similarly situated enough to testify as representatives of one another."). It also leads to the central legal question set forth above: whether those established primary duties, as a matter of law, meet all elements of the administrative exemption.

### IV. Kroger's submission of non-party, current employee declarations are irrelevant and do not create issues of fact. In fact, they provide further support that Plaintiffs' primary duties are undisputed.

Kroger also spends much of its opposition citing to various declarations of non-party, current employees of Kroger in an attempt to claim that the 27 Plaintiffs at issue performed exempt work. These declarations are not only irrelevant to the work that <u>Plaintiffs</u> performed, they provide further support that Plaintiffs all had the same primary job duties. Indeed, these individuals all confirm that they reviewed online applications, regularly performed phone screens, were provided a script with questions to guide them in performing a phone screen, and that they scheduled applicants for in-store interviews. *See* Declarations of Laurie White, ¶ 11-13; Shawn Scott, ¶ 3-4, 6-7; Eric Shrider, ¶ 7-8; Katelyn Davis, ¶ 2; Erica Brown, ¶ 3-5; Aidan Keenan, ¶ 7-8; Courtney Strosnider, ¶ 1-4.

It is also telling that Kroger would now attempt to use these <u>non-party</u> employees'

testimony in order to impute factual issues to the 27-member collective. Throughout certification briefing, Kroger made repeated and exaggerated arguments that these same employees "regularly performed jobs that were completely different from the work plaintiffs performed," and used those arguments as a basis to claim that class certification was not appropriate. Memo in Opp. to Motion to Certify, pg. 13-16. Now, however, Kroger apparently concedes that these employees were performing the same work as Plaintiffs, and that the way in which those employees performed their job is exactly how Kroger instructed them. Such a hypocritical argument is meritless and should be disregarded on summary judgment.

**V.      Kroger fails to dispute that Plaintiffs' primary duty of screening and scheduling applicants at CoRE is work directly related to management or general business operations.**

In opposing the other duties test of the administrative exemption (management or general business operations), Kroger essentially re-asserts its disagreement with Plaintiffs' well-established primary duties. *See* Memo in Opp. pg. 24. As set forth above, there is no genuine dispute about these duties, and Kroger fails to argue that mere screening and scheduling constitutes the performance of office or non-manual work <u>directly related</u> to the management or general business operations of Kroger.

*Ogden* makes clear that it does not, and Kroger's attempt to distinguish it from this case is meritless. In particular, Kroger claims that the plaintiff in *Ogden* had no authority to decide which applicants to call. A brief review of the case, however, makes clear that this is simply not true:

> In examining the portions of Ogden's deposition cited by CDI, it is clear that Ogden performed the following duties: <u>he would search for individuals who might be qualified for certain IT jobs,</u> <u>he would determine whether "their background matches up with a job order" based on both subjective and objective factors, he would contact them and determine their salary requirements,</u> he would provide the resumes of qualified candidates to his account manager who could decide whether to present those candidates to the client, if the client was interested in hiring a candidate, he would contact the candidate for an interview with the client, and if

the client decided to hire the candidate, he would call the candidate to make an offer
on behalf of the client.

2010 U.S. Dist. LEXIS 66686 at *6-7. The tasks set forth in *Ogden* are substantially similar to the

primary screening and scheduling duties of Plaintiffs—Plaintiffs review an online application for

minimum qualifications, contact the applicant to confirm interest, ask three pre-established

screening questions, and submit the applicant to a local hiring manager for review. The *Ogden*

court found that such tasks are not <u>directly related</u> to management or general business operations,

and the result should be the same here.

### VI. Kroger fails to present any evidence that its misclassification of Plaintiffs was made in good faith and with reasonable grounds.

Finally, Kroger makes no effort to establish that its decision to classify Plaintiffs as exempt

was made in good faith or with reasonable grounds to support its decision. Rather, it simply uses

the same flawed logic as above by claiming that Mr. Moffett made the decision "based on his

understanding that CoRE recruiters would exercise clear discretion and independent judgment in

finding best-fit candidates for Kroger positions." Obviously, such a conclusory statement does not

meet the legal standard under 29 U.S.C. § 260 for avoiding liquidated damages. Thus, Plaintiffs

are additionally entitled to liquidated damages as a matter of law.

### VII. Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant

Plaintiffs' motion for partial summary judgment.

Respectfully submitted,

/s/ Joshua M. Smith
Peter A. Saba (0055535)
Joshua M. Smith (0092360)
Sharon Sobers (0030428)
Jeffrey M. Nye (0082247)
STAGNARO, SABA

& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and accurate copy of the foregoing was served electronically through the District Court's electronic case filing system upon David K. Montgomery, Esq. and Ryan M. Martin, Esq., Jackson Lewis P.C., PNC Center, 26th Floor, 201 East Fifth Street, Cincinnati, Ohio 45202, this 12th day of April, 2019.

/s/ Joshua M. Smith
Joshua M. Smith (0092360)