## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH HARDESTY, et al.** | : | Case No. 1:16-CV-00298 |
| Individually and on behalf of All | : | |
| Others Similarly Situated | : | Judge Matthew W. McFarland |
| | : | |
| Plaintiffs, | : | |
| | : | **DEFENDANTS' OBJECTIONS TO** |
| v. | : | **PLAINTIFFS' PROPOSED JURY** |
| | : | **INSTRUCTIONS AND PROPOSED** |
| **THE KROGER CO.,** *et al.* | : | **SUPPLEMENTAL INSTRUCTION** |
| | : | **AND JUROR INTERROGATORY** |
| Defendants. | : | |

Defendants respectfully submit the following objections to Plaintiffs' proposed jury instructions, interrogatories and verdict forms.  For ease of reference, Defendants have restated Plaintiffs' proposed instructions (with Plaintiffs' footnotes removed so they are not confused with Defendants' objection citations) and included their objections immediately below.  In addition, in response to Plaintiffs' proposed instructions related to the calculation of damages, and as requested by the Court, Defendants have attached a proposed supplemental jury instruction and juror interrogatory as Exhibit A.

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 1
NATURE OF THE CASE

This is a civil action for unpaid overtime compensation brought by 27 current and former employees ("Plaintiffs") of Defendant, The Kroger Company under the federal Fair Labor Standards Act of 1938, sometimes referred to as the "FLSA," and related Ohio law.

The FLSA requires that employers pay overtime compensation to their employees for all hours worked in excess of forty per week at a rate of one and one-half (1.5) times their regular rate of pay. The purpose of the FLSA is to eliminate labor conditions which are detrimental to the minimum standard of living necessary for health, efficiency, and general well-being of workers.

The Plaintiffs assert that Kroger violated these laws by failing to pay Plaintiffs overtime compensation from the period of October 31, 2014, to December 1, 2016, while they were employed as "Recruiters" at Kroger's "Center of Recruiting Excellence" in Cincinnati, Ohio. Kroger denies the Plaintiffs' claims, and asserts that Plaintiffs' job duties meet an exemption to the FLSA's overtime requirements, called the "administrative exemption."

**DEFENDANTS' OBJECTION:  Defendants object to this instruction because it is confusing and misleading to the jury. The second paragraph of the instruction fails to identify that the FLSA does not require employers to pay overtime compensation to individuals who meet an applicable exemption.  Moreover, the purpose of the FLSA is irrelevant to the jury's deliberations.  Finally, this instruction does not accurately state Defendants' full position in this matter, which is laid out in Defendants' proposed Instruction No. 3.**

1

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2
COLLECTIVE ACTION AND REPRESENTATIVE PROOF

This case is a collective action certified by the Court. The Fair Labor Standards Act allows employees to pursue overtime claims on behalf of themselves and other employees similarly situated to them. This type of case is called a "collective action." For purposes of trial, this means the testimony and evidence Plaintiffs present may be considered as representative proof on behalf of the whole class, including those non-testifying Plaintiffs. You may, therefore, rely on the testimony Plaintiffs give along with the other evidence offered, to support your verdict for all Plaintiffs who are part of this case. In other words, if the testifying Plaintiffs' evidence establishes that they worked in excess of forty hours per week and are not subject to the administrative exemption, then those Plaintiffs that did not testify are also deemed by inference to have worked in excess of 40 hours a week, and are deemed not to be subject to the administrative exemption. If the Plaintiffs worked over 40 hours a week and are not subject to the administrative exemption, they are entitled to overtime compensation.

The Plaintiffs are not required to have a specific number of employees give testimony; the "quality" of the sample, rather than the "quantity," is of overriding importance. Further, the testifying Plaintiffs are not required to have personal knowledge of the exact hours the non-testifying Plaintiffs worked.

**DEFENDANTS' OBJECTION:** Defendants object to this instruction because it does not accurately define the nature of representative testimony. The instruction implies that the jury must conclude that Plaintiffs' testimony and evidence at trial is representative of the entire collective. This is not the case.[1] Rather, it is up to the jury to decide if the testimony of the testifying Plaintiffs is representative of the entire collective, which is accurately stated in Defendants' proposed Instruction No. 4. The instruction on representative evidence should accurately tell jurors that they are entitled to judge whether the testimony of Plaintiffs at trial is fairly representative of non-testifying opt-ins.

---

[1] *Takacs v. Hahn Auto. Corp.*, 1999 U.S. Dist. LEXIS 22146, *10 (S.D. Ohio Jan. 25, 1999) ("Without having heard the Plaintiffs' evidence, it is not possible to determine whether the four to six of them who will testify will be fairly representative. However, if they propose to prove damages for all Plaintiffs, with testimony from only four to six of their number, the law does not prohibit them from attempting to do so.").

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 3
ELEMENTS OF OVERTIME PAY

In order for the Plaintiffs to establish their claim for overtime compensation, they must prove by a preponderance of the evidence that they worked in excess of forty (40) hours during one or more workweeks for which they were not properly compensated. If you find that the Plaintiffs have proved this proposition by a preponderance of the evidence, then you must find that the Plaintiffs have stated a valid overtime claim against Kroger.

**DEFENDANTS' OBJECTION:** **Defendants object to this instruction because it is inaccurate. If Plaintiffs establish their *prima facie* case, the burden shifts to Defendants to establish their exemption defense. Plaintiffs would not "have stated a valid overtime claim against Kroger." This language is confusing to the jury and prejudicial. Defendants have accurately stated this issue in their prosed Instruction No. 7. In addition, Plaintiffs' proposed instruction omits the "just and reasonable inference" prong established in *Anderson v. Mt. Clemens Pottery Co.*[2]**

---

[2] **328 U.S. 680, 687 (1946) (superseded on other grounds by statute).**

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 4
AFFIRMATIVE DEFENSES

If Plaintiffs establish a valid claim for overtime, Defendant Kroger can still prevail if Kroger can establish an affirmative defense to the claim.  An affirmative defense is an assertion of facts and arguments that, if proven true, will defeat the plaintiff's claim, even if all the elements of the plaintiffs' claim are true.

Kroger has the burden of proving the elements of an affirmative defense by a preponderance of the evidence. I'll instruct you on the facts Kroger must prove for any affirmative defense. After considering all the evidence, if you decide that Kroger has successfully proven that the required facts are more likely true than not, the affirmative defense is proved and Kroger has defeated the Plaintiffs' overtime claims.

**<u>DEFENDANTS' OBJECTION</u>:  Defendants object to this instruction because it is confusing to the jury in its use of the phrase "valid claim for overtime."  It is also unnecessary to provide the legal definition of "affirmative defense" to the jury. Defendants' proposed Instruction No. 8 more accurately and concisely instructs the jury in this regard.**

## PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 5
FLSA ADMINISTRATIVE EXEMPTION

Kroger has asserted the affirmative defense that the Plaintiffs were employees employed in a bona fide administrative capacity under the FLSA, and thus exempt from the FLSA's overtime requirements. This affirmative defense is commonly referred to as the "administrative exemption."

The administrative exemption is an affirmative defense on which Kroger must prove each element by a preponderance of the evidence. To prevail on this affirmative defense, Kroger must prove each the following:

1. That the Plaintiff's primary duty was the performance of office or non-manual work directly related to the management or general business operations of the Defendant or the Defendant's customers; and

2. Plaintiff's primary duty included the exercise of discretion and independent judgment with respect to matters of significance.

Thus, in order to be an "administrative employee" the employee's primary or major duties must be non-manual work directly related to management or general business operations, and must require an exercise discretion and independent judgment with respect to matters of significance. If both are not proved, the exemption fails.

**<u>DEFENDANTS' OBJECTION</u>: Defendants object to providing separate instructions regarding the administrative exemption (in general) and its various elements. Rather, it is clearer to the jury to have an explanation of the elements in the same instruction. Moreover, Defendants object to providing the jury an instruction or interrogatory related to the "directly related to the management or general business operations" prong because the**

6

Court has already determined, in its Order on Plaintiffs' Motion for Partial Summary Judgment,[3] the following:

- "Plaintiffs concede that Kroger's primary production work is selling groceries"

- "[T]he general business operations of Kroger…fairly construed, require staff"

- CoRE recruiters "channeled job applicants to Kroger stores to that Kroger could staff its stores."[4]

Based on these three undisputed facts, there can be no dispute that CoRE Recruiters' primary duty was the performance of office or non-manual work directly related to Kroger's general business operations. As a result, this issue should not go to the jury.

---

[3] *Hardesty v. Kroger Co.,* S.D. Ohio No. 1:16-cv-298, 2020 U.S. Dist. LEXIS 225344 (Dec. 1, 2020).
[4] *Id.* at **15-16.

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 6
PRIMARY DUTY

In determining whether the administrative exemption applies, you are to focus on the Plaintiffs' "primary duty." The term "primary duty" means the principal, main, major or most important duty that the Plaintiffs perform. This determination must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing the exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

The amount of time spent performing exempt work can be a useful guide in determining the primary duty of an employee. A task on which an employee spends more than 50 percent of his/her time will generally satisfy the primary duty requirement. Amount of time alone, however, is not the sole test, and it is not required that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion, i.e. duties on which they spend less than 50% of their time are the "principal" or "chief"—meaning the most important—duty performed by the employee.

Here, you are instructed that the Plaintiffs' primary duty is composed of three tasks: 1) Reviewing applications, 2) conducting phone screens, and 3) scheduling applicants for in store interviews. As such, in order for Kroger to establish that the administrative exemption applies to Plaintiffs, Kroger must establish that these primary duties are considered exempt work based upon the elements of the administrative exemption.

**DEFENDANTS' OBJECTION**:  Defendants object to this jury instruction for multiple reasons.  First, although the first paragraph of the instruction accurately summarizes the factors to consider in relation to determining an employee's "primary duty," the second paragraph overemphasizes the amount of time spent performing exempt work, which is not determinative.[5]  Second, the instruction incorrectly advises the jury that the three "tasks" of reviewing applications, conducting phone screens and scheduling interviews constitute CoRE Recruiters' three primary duties and that Kroger must establish "that these primary duties" are considered exempt work.  This misstates the Court's decision.  The Court did not determine that CoRE Recruiters had three separate "primary duties," as Plaintiffs suggest.  Instead, the Court stated that the entire "three-part process of reviewing applications, making phone screens, and scheduling interviews constitutes the recruiters' primary duty for the purpose of determining whether the administrative exemption applies."[6]  The primary duty described by the Court is a single process—not three separate processes.  As a result, if the jury is instructed at all on the primary duty of CoRE Recruiters, the jury should be informed that Kroger must establish that the process identified by the Court as a whole must meet the elements of the administrative exemption.  Third, Defendants are unclear whether the Court's ruling with respect to CoRE Recruiters' primary duty related only to the motion for partial summary judgment or continues through trial.  Defendants respectfully submit the evidence establishes that CoRE Recruiters' primary duty was to identify and select best-fit candidates for Kroger's supermarkets and that they should be

---

[5] **29 C.F.R. § 541.700(b)** ("[N]othing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work.").
[6] *Hardesty v. Kroger Co.*, 2020 U.S. Dist. LEXIS 225344, *14 (S. D. Ohio Dec. 1, 2020).

able to make that argument to the jury.  For this reason, Defendants' proposed Instruction No. 9 does not instruct the jury regarding CoRE Recruiters' primary duty and should be used in place of Plaintiffs' proposed instruction.

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 7
WORK DIRECTLY RELATED TO MANAGEMENT OR GENERAL BUSINESS
OPERATIONS

Under the first element of the administrative exemption, Kroger must establish that the Plaintiffs' primary duty is the performance of work directly related to the management or general business operations of the employer or its customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment. This distinction is sometimes called the administrative/production dichotomy.

Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

**DEFENDANTS' OBJECTION:  Defendants object to the reference to the administrative/production dichotomy, which does not apply to this case for the reasons outlined in Defendants' objection to Plaintiffs' Proposed Instruction No. 5, which Defendants incorporate by reference.  The reference will also be confusing to the jury.**

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 8
DISCRETION AND INDEPENDENT JUDGMENT WITH RESPECT TO MATTERS OF
SIGNIFICANCE

To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. In general, it involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.

The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a "statistician."

The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the

12

employee is not exercising discretion and independent judgment.  For example, the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies. The management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization may have the plan reviewed or revised by superiors before it is submitted to the client.

An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer. Even if employees exercise some discretion and independent judgment, that discretion must be exercised with respect to "matters of significance," important decisions involving important consequences. In determining whether such discretion and independent judgment was exercised with respect to matters of significance, the work itself must be of substantial importance—not the size of the consequences or loss that may result from improper performance of the employee's duties.

Factors to consider when determining whether an employee exercises discretion and independent judgment *with respect to matters of significance* include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting

the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

**Defendants' Objection:  Defendants object to this instruction as follows:**

**1)  Paragraph two of the instruction contains irrelevant information that will confuse the jury.  For example, the statement that "[a]n employee who simply tabulates data is not exempt, even if labeled as a 'statistician'" has no bearing on this case.  Moreover, the paragraph does not contain controlling case law from the Sixth Circuit Court of Appeals, as cited by this Court in its ruling on Plaintiffs' Motion for Partial Summary Judgment, that "'[t]o determine whether an employee, constrained by guidelines and procedures, actually exercises any discretion or independent judgment,' courts consider 'whether those guidelines and procedures contemplate independent judgment calls or allow for deviations.'"[7]  This language is contained in Defendants' proposed Instruction No. 10.**

---

[7] ***Hardesty v. Kroger Co.*, 2020 U.S. Dist. LEXIS 225344, \*\*21-22 (S. D. Ohio Dec. 1, 2020) (citing *Renfro v. Indiana Michigan Power Co.*, 497 F.3d 573, 577 (6th Cir. 2007)).**

2)  The credit manager example in Paragraph 3 of the proposed instruction should be removed because it is irrelevant to this case, does not assist the jury in understanding the instruction and will cause confusion.

3)  Defendants object to the inclusion of the "financial loss" language and examples in Paragraph 4 because those are not relevant to this case and will simply confuse the jury.

4)  Defendants further object to the inclusion of the "important decisions involving important consequences" language in the description of "matters of significance" in Paragraph 4.  This language from an Eighth Circuit case is vague and does not assist the jury in understanding what "matters of significance" means.  Moreover, the inclusion of the "size of consequences or loss" language from the *Lutz* case would confuse the jury because, as stated above, that issue is not relevant to the facts of this case.

5)  Defendants object to the factors listed in the final paragraph of the instruction because they are generally not helpful to the jury, cause confusion, and are not exhaustive.

6)  Finally, Defendants object to this instruction because it does not inform the jury that the Court has already determined that CoRE Recruiters worked on matters of significance. This Court has already ruled as follows:

> The facts here show that the recruiters worked on matters of significance. Donald Moffett, general manager of CoRE, testified that part of the job required them to "make sure that we were scheduling enough interviews at the stores ... to be able to hire enough folks to keep the stores staffed." (Doc.

**46, Moffett Dep. at 60, Page ID 1771.) CoRE supported several aspects of the stores' needs, including the grocery retail divisions, new store openings, pharmacy operation, manufacturing, and the general office. (*Id.* at 24, Page ID 1762.) CoRE provided prospective staff for the store and the stores require staff to operate. So the recruiters worked on matters of significance.[8]**

**As a result, the jury should be instructed that CoRE Recruiters worked on matters of**

**significance.**

---

[8] ***Hardesty v. Kroger Co.*, 2020 U.S. Dist. LEXIS 225344, *25 (S. D. Ohio Dec. 1, 2020)**

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 9
HR MANAGERS VS. SCREENERS

Human resources managers who formulate, interpret or implement employment policies and management consultants who study the operations of a business and propose changes in organization generally meet the duties requirements for the administrative exemption. However, personnel clerks who "screen" applicants to obtain data regarding their minimum qualifications and fitness for employment generally do not meet the duties requirements for the administrative exemption. Such personnel clerks typically will reject all applicants who do not meet minimum standards for the particular job or for employment by the company. The minimum standards are usually set by the exempt human resources manager or other company officials, and the decision to hire from the group of qualified applicants who do meet the minimum standards is similarly made by the exempt human resources manager or other company officials. Thus, when the interviewing and screening functions are performed by the human resources manager or personnel manager who makes the hiring decision or makes recommendations for hiring from the pool of qualified applicants, such duties constitute exempt work, even though routine, because this work is directly and closely related to the employee's exempt functions.

**DEFENDANTS' OBJECTION: This Court has already determined that the human resources manager vs. personnel clerk example in 29 C.F.R. § 541.203(e) does not apply to this case and that the Court should "avoid drawing analogies the facts do not permit."[9] The instruction confusingly creates a false dichotomy between two positions—neither of which is applicable to this case. Plaintiffs continue to pre-suppose, without any basis, that all employees with human resources-related responsibilities must fit into one of two**

---

[9] *Id.* at **18-21.

categories – exempt human resources managers or non-exempt personnel clerks. There is no legal basis for this assumption, and the regulation merely provides these descriptions as examples. In other words, even if Plaintiffs could not be considered "[h]uman resources managers," they are not automatically categorized as "personnel clerks." Indeed, the Sixth Circuit, and this Court, have already determined that recruiters like Plaintiffs may be considered exempt if they "match[] candidates to clients based on fit—meaning subjective criteria such as the match between a candidate's personality and a client's corporate culture—as opposed to objective criteria such as years of experience or test scores, involves meaningful discretion and independent judgment."[10] This language, which is contained in Defendants' proposed instruction, is far more helpful to the jury because it actually relates to the position at issue in this case. For this reason, Plaintiffs' proposed instruction should not be given.

In addition, this instruction is extremely prejudicial to Defendants. The use of the word "screen" in the regulation and in materials related to CoRE Recruiters' telephone interviews may cause jurors to unfairly equate the personnel clerk and recruiter positions.

---

[10] *Id.* at \*19 (citing *Perry v. Randstad General partner (US) LLC*, 876 F.3d 191, 200 (6th Cir. 2017)).

18

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 10
FLSA WAIVER

The mere fact that a Plaintiff has signed a contract or agreement stating that they will not receive overtime, or was told at the time they were hired that they would not receive overtime pay, or understood that they would not receive overtime pay is not determinative of whether or not the employee is entitled to overtime. Under the FLSA, the Plaintiffs cannot waive, or give up, their right to overtime, presuming they are found to be non-exempt.

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 11
REPRESENTATIVE PROOF AS TO DAMAGES

If you find in favor of Plaintiffs and against Kroger as to Plaintiffs' overtime claims, you will then determine the average hours of overtime, per week, worked by each of the testifying Plaintiffs, as a matter of just and reasonable inference. In addition, you will be asked to give an estimate of the average number of hours worked per week by the non-testifying Plaintiffs during the relevant period.

**DEFENDANTS' OBJECTION:  Defendants object to this instruction because it does not fully describe the burden shifting associated with determining average overtime hours worked and presumes that the jury will have sufficient representative evidence to determine hours for non-testifying Plaintiffs.**

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 12
DETERMINING HOURS WORKED

The Plaintiffs bear the burden of proving they performed work for which they were not properly compensated, and the amount and extent of that work. However, employers, including Kroger, are required to keep an accurate record of all the hours worked by each employee each workday, the total hours worked each workweek, and the total amounts paid for overtime hours worked by each employee. When the employer does not keep these records, the employer has to bear the burden of the lack of preciseness in the back wage calculations. Employers may not transfer the responsibility of ensuring those records' accuracy to their employees such as the Plaintiffs.

You must determine whether Kroger kept adequate records that accurately reflected all of this information. If you determine that Kroger failed to maintain accurate records and failed to prove the hours Plaintiffs worked, then the Plaintiffs are entitled to back pay for the amount of overtime work they establish through just and reasonable inferences, even if that amount is approximate. The Plaintiffs do not need to provide exact proof of the precise number of hours worked; rather, their honest estimates are enough.

Under these circumstances, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the Plaintiffs' evidence. If the employer fails to meet this burden, the employees are entitled to back pay for the amount of work time that they established, even though the amount is only approximate. The employer cannot complaint that the estimation of hours worked lack the precision that would have been possible if the employer had kept the records required by law.

**DEFENDANTS' OBJECTION:** **This instruction is objectionable as follows:**

- **It does not contain information relevant to actually determining hours worked per the applicable regulations (i.e., the definition of hours worked and what is and is not included as hours worked under federal and state law).**

- **It fails to instruct the jury that Defendants are not required to keep records of employee hours worked if the employees are properly classified as exempt from overtime compensation.**

- **It implies that Plaintiffs are automatically entitled to overtime compensation based on their estimates of hours worked, notwithstanding any evidence Defendants introduce to negate the reasonableness of Plaintiffs' assertions. It is within the sole discretion of the jury to weigh the reasonableness of Plaintiffs' estimates in light of all the evidence produced by the parties at trial.**

**For these reasons, Defendants' proposed Instruction Nos. 12 and 13 more accurately and fully define hours worked and the just and reasonable inference standard.**

PLAINTIFFS PROPOSED JURY INSTRUCTION NO. 13
REGULAR RATE OF PAY AND OVERTIME RATE OF PAY

If an employee is employed solely on a salary basis, the regular hourly rate of pay, in which overtime compensation at a rate of time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. For example, if an employee is hired at a salary of $400 per week and if it is understood that this salary is compensation for a regular workweek of 40 hours, the employee's regular rate of pay is $400 divided by 40 hours, or $10 an hour, and when the employee works overtime the employee is entitled to receive $10 for each of the first 40 hours and $15 (one and one-half times $10) for each hour thereafter.

In this case, you are instructed that the Plaintiffs regular rate of pay is determined by dividing the employees annual salary by 52 weeks, and further dividing that salary by 40 hours per week. This will provide you a Plaintiffs regular rate of pay, upon which you can then determine the employee's overtime rate of pay by multiplying that amount by one and one-half (1.5).

**DEFENDANTS' OBJECTION:** **Defendants object to the jury calculating monetary damages. This issue should be left for the Court, as Defendants are unaware of any factual disputes related to damages, other than the hours Plaintiffs worked over 40, if any. Having the jury perform such calculations for 27 Plaintiffs would likely lead to confusion and error. For these reasons, the jury should only be asked to determine the average number of overtime hours worked per week by each Plaintiff, as stated in Defendants' proposed instructions and interrogatories.**

Moreover, Defendants believe that the applicable overtime rate to be used in this case (half-time vs. time and one-half) is a legal issue for the Court to decide.[11] Defendants object to the use of a time and one-half calculation in this case because Plaintiffs and Defendants undisputedly had a clear mutual understanding that the salary Plaintiffs received was designed to compensate them for all hours worked in a week, whether few or many.[12]

Because Defendants believe that the jury should only determine average hours worked, as described above, it did not submit jury instructions related to the calculation of monetary damages. However, to the extent the Court determines that any factual issues exist regarding the mathematical calculation of damages, or that the jury should determine the applicable overtime rate and calculate overtime compensation, Defendants request that the jury be given the attached "Clear Mutual Understanding" instruction and interrogatory, attached as Exhibit A. If the jury determines that the elements of the "Clear Mutual"

---

[11] *See, e.g., Snodgrass v. Bob Evans Farms, LLC*, 2015 U.S. Dist. LEXIS 33621, *15 (March 18, 2015).

[12] Although several courts in the Southern District of Ohio have not endorsed using a half-time rate in misclassification cases, the Sixth Circuit Court of Appeals appears to have not addressed the issue. Moreover, several other circuit courts have expressly endorsed using a half-time method under the circumstances presented in this case. *Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 680 (7th Cir. 2010) (affirming finding of a clear mutual understanding where "Urnikis-Negro routinely worked substantially more than 40 hours per week throughout her tenure with AFPS and was never paid anything apart from her fixed weekly wage of $ 1,000," and even though "Urnikis-Negro likely thought she would be working 40-hour weeks, her understanding was that her salary was to cover whatever time she was called upon to work in a given week.") (internal quotation marks omitted); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011) (where the former employees routinely worked over 40 hours in a week without extra pay, they "agreed to receive straight time pay for all hours worked in a given workweek"); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 39 (1st Cir. 1999) ("the evidence of the parties' post-hiring conduct reinforces Putnam's contention that Valerio understood that her salary was to compensate her for fluctuating hours. During the first eleven months of her employment, Valerio routinely worked without complaint more than 40 hours per week without extra pay").

Understanding" test have been met, the Court should determine whether, as a matter of law, a half-time calculation of overtime should be used rather than time and one-half.[13]

---

[13] *See id.*

PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14
DAMAGES

If you find Kroger failed to pay Plaintiffs for overtime hours worked in violation of the FLSA and that Kroger has not proven all elements of the administrative exemption, you must determine how many overtime hours each testifying Plaintiff worked on average per week. That is, you must first determine whether the testifying Plaintiffs worked uncompensated overtime hours and if so, approximately how many hours they worked as a matter of just and reasonable inference.

First, you must determine, based upon the evidence presented, an average number of overtime hours each Plaintiff worked on a weekly basis. Once you have made that determination, you will then take those average amounts and multiply them by the weeks worked by each Plaintiff, and the Plaintiffs overtime rate of pay. The result of that calculation will provide the amount of back wages owed to each testifying Plaintiff.

Finally, after you have made these determinations as to the testifying Plaintiffs, you must then apply those amounts to the non-testifying Plaintiffs on an average basis. This is done by adding the amount of back wages owed to each testifying Plaintiff, and dividing by the number of testifying Plaintiffs in this case. This will provide the amount of back wages owed to each non-testifying Plaintiff.

**DEFENDANTS' OBJECTION:** **Defendants object to this instruction for the reasons identified with respect to Instruction No. 13, which are incorporated by reference. In addition, the jury should determine the average amount of overtime worked per week by each Plaintiff separately, as outlined in Defendants' instructions, based on the evidence produced by the parties at trial, including the Plaintiffs' recruiting team, applicable**

26

**schedule, dates of employment, and other testimony or evidence provided.  This instruction also presupposes that Plaintiffs will be able to produce sufficient representative evidence regarding damages.**

## LIABIILITY INTERROGATORIES

**Question No. 1**. Have Plaintiffs proved that they worked more than forty (40) hours during one or more workweeks for which they were improperly compensated?

Answer:        YES   _____            NO   _____

(If you answered, "no" to Question number one, do not answer any further questions.  You have found in favor of Defendant Kroger that none of the recruiters worked overtime for which they were not paid.)

**Defendants' Objection**:  Defendants have no objection to the inclusion of this interrogatory in general but have two specific objections to the language.  First, Defendants object to the phrase "improperly compensated" at the end of the interrogatory.  Rather, the phrase "not paid overtime" should be used.   Second, Defendants object to the extent the instructions following the interrogatory indicate that Plaintiffs' burden is only to show that a single recruiter worked more than 40 hours without receiving overtime.  That is not the case in this collective action.

**Question No 2.**  Has Kroger proved that the primary duties of Plaintiffs involved work directly related to the management or general business operations of CoRE?

Answer:        YES   _____            NO   _____

**Defendants' Objection:  Defendants object to this interrogatory for the same reasons outlined with respect to Instruction No. 7.**

**Question No. 3**   Has Kroger proved that the primary duties of Plaintiffs involved the exercise of independent judgment with respect to matters of significance?

Answer:        YES   _____            NO   _____

If you have answered "Yes" to both Questions  2 and  3  above:  You have found for Defendant Kroger.  Do not answer any additional questions.

If you answered "No" to either Question 2 or 3 above:  Please answer the Damages Interrogatories set forth below.

**DEFENDANTS' OBJECTION:  Defendants object to this interrogatory with respect to Plaintiffs' reference to "primary duties" for the reasons outlined with respect to Instruction No. 6.**

## DAMAGES INTERROGATORIES

**Question No. 1:**

Identify the amount of overtime worked per week by each of the testifying Plaintiffs.

| Testifying Plaintiff | Average Overtime Hours Per Week |
|---|---|
| [To be filled in at close of evidence and prior to jury deliberations] | |
| | |
| | |
| | |
| | |
| | |

**DEFENDANTS' OBJECTION:  Defendants object to the extent that all Plaintiffs should be listed above for the reasons outlined with respect to Defendants' objection to Instruction No. 14.**

**Question No. 2**:  Based upon the Average Overtime Hours Per Week determined in Question No. 1, you must then determine the amount of back wages owed to each testifying Plaintiff. This is done by multiplying the Average Overtime Hours Worked Per Week for each Plaintiff by the number of weeks each Plaintiff worked at Kroger, and then multiplying that number by the Total Overtime by the overtime rate of pay determined in Instruction No. 13. This calculation is performed as follows:

**(Average OT Hours Per Week) * (Weeks Worked) * (OT Rate of Pay) = Wages Owed**

| Testifying Plaintiff | Average OT Hours Per Week | Weeks Worked | OT Rate of Pay | Wages Owed |
|---|---|---|---|---|
| [To be filled in at close of evidence and prior to jury deliberations] | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**DEFENDANTS' OBJECTION:** Defendants object to this interrogatory for the reasons outlined with respect to Defendants' objection to Instruction No. 13.

**Question No. 3:** Finally, based upon the above you must also determine the overtime wages owed to the non-testifying Plaintiffs, which will be done on an estimated average basis. You are instructed to make this determination by adding the Back Wages determined to be owed to each testifying Plaintiff in Question 2, and dividing that total amount by the number of testifying Plaintiffs.

Back wages owed to each non-testifying Plaintiff: _____

**DEFENDANTS' OBJECTION:** Defendants object to this interrogatory for the reasons outlined with respect to Defendants' objection to Instruction Nos. 13 and 14.

Respectfully submitted,

*/s/ David K. Montgomery*
David K. Montgomery (0040276)
Ryan M. Martin (0082385)
Jackson Lewis PC
PNC Center, 26th Floor
201 East 5th Street
Cincinnati, OH 45202
Telephone: (513) 898-0050
Facsimile: (513) 898-0051
David.Montgomery@jacksonlewis.com
Ryan.Martin@jacksonlewis.com

29

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served upon opposing counsel via the Court's electronic docketing system this 28th day of February, 2022.

*/s/ David K. Montgomery*
David K. Montgomery

4879-9325-6465, v. 1