**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| HARDESTY, et al., | : | Case No. 1:16-cv-298 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| THE KROGER CO., et al., | : | |
| | : | |
| Defendants. | : | |

---

## ORDER GRANTING AND DENYING MOTIONS IN LIMINE

---

This case is before the Court on the following issues raised by the parties' motions in limine:

(1) Defendants' motion in limine to exclude (i) evidence regarding the reclassification of CoRE recruiters in December 2016 and (ii) evidence related to Kroger's internal policy counting vacation and holiday time as hours worked toward overtime for non-recruiters (Doc. 98);

(2) Plaintiffs' motion in limine to exclude evidence of workplace misconduct or disciplinary actions (Doc. 100);

(3) Plaintiffs' motion in limine to exclude evidence of Plaintiff Hardesty's wrongful termination lawsuit and conduct in furtherance of that lawsuit (Doc. 102); and

(4) Plaintiffs' motion in limine as to documents produced three years after the discovery cutoff (Doc. 105).

I.     **Standard**

The purpose of motions in limine is to eliminate evidence that is clearly inadmissible for any purpose, thus promoting a more efficient trial. *Bouchard v. Am. Home Prod. Corp.*, 213 F. Supp. 2d 802, 810 (N.D. Ohio 2002).  This Court adjudicates motions in limine under its "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).  Only when evidence is clearly inadmissible on all potential grounds should a court exclude evidence in limine.  Unless evidence meets this high standard, evidentiary rulings are generally deferred until trial, so that questions of foundation, relevance, and prejudice may be resolved in the trial context. *Bouchard*, 213 F.Supp.2d at 810.  Denial of a motion in limine does not mean that the evidence is guaranteed to be admitted at trial; the court will hear objections to such evidence if and when they arise at trial. *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010).  And the court has the discretion to alter a previous in limine ruling during trial. *Luce*, 469 U.S. at 41-42.

II.     **Analysis**

**A.  Reclassification of CoRE recruiters in December 2016**

Defendants argue for the exclusion of any evidence, testimony, or argument concerning Kroger's reclassification of Plaintiffs and other recruiters as hourly employees in December 2016.

Several courts have concluded that an employer's own classification of its employees is "not at all determinative of the proper classification under the FLSA." *Oetinger v. First Residential Mortg. Network, Inc.*, No. CIV. A. 3:06-CV-381, 2009 WL

2162963, at *3 (W.D. Ky. July 16, 2009). The same is true of an employer's reclassification. *See also Pippins v. KPMG LLP*, 921 F. Supp. 2d 26, 55 (S.D.N.Y. 2012), *aff'd*, 759 F.3d 235 (2d Cir. 2014) (collecting cases) ("it is well settled that an employer's reclassification of employees for FLSA purposes is not a materially relevant factor in determining a particular employee's exempt status under a prior policy"); *Heibel v. U.S. Bank Nat. Ass'n*, No. 2:11-CV-00593, 2012 WL 4463771, at *5 (S.D. Ohio Sept. 27, 2012) ("reclassification is not an admission of liability and will likely have limited, if any, probative value as to the ultimate merits of Plaintiffs' claims").

These courts' reasoning is persuasive. The issue in this case, as both sides have recognized, is whether Plaintiffs are entitled to overtime compensation and, specifically, whether the administrative exemption applies. Those questions involve inquiries into the nature of the work the employees performed. How Kroger classified or reclassified its employees is minimally relevant, if at all, to the nature of the work those employees actually performed.

Plaintiffs argue that Kroger's reclassification decision—including Kroger's justification that it made the decision based on the Department of Labor's proposed revisions to the FLSA overtime regulations—is relevant. They claim that Kroger's explanation suggests Kroger knew that its practices were unlawful. But they do not explain, granting their premise for discussion's sake, how such knowledge would be relevant to whether the nature of their work satisfied the administrative exemption.

Moreover, the slim (if any) probative value this evidence has is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time.

Fed. R. Evid. 403. Such evidence may unfairly prejudice Defendants and confuse the issues by distracting attention from the nature of the work performed.

For the reasons above, the Court **GRANTS** Defendants' motion in limine on the issue of the December 2016 reclassification.

### B. Kroger's internal policy counting vacation and holiday time as hours worked toward overtime for non-recruiters

Defendants also seek the exclusion of evidence of Kroger's internal policy that credits vacation and holiday hours as hours worked for the purposes of calculating overtime for some non-exempt employees. Opposed, Plaintiffs argue that this policy is relevant to the calculation of their damages.

Vacation time (and similar paid time off) is excluded from the term "regular rate" under 29 U.S.C. § 207(e)(2). Sums excluded from the regular rate under § 207(e) do not count toward overtime. 29 U.S.C. § 207(h). So paid time off is not made as compensation for hours of employment and, consequently, those payments are not credited toward overtime compensation. 29 C.F.R. § 778.218.

This means that Kroger's policy of counting vacation and holiday hours toward overtime for some non-exempt employees was voluntary. Plaintiffs cite the Kroger Handbook providing that overtime is paid for hours worked over certain thresholds, "including hours paid for approved personal days, holidays and vacation days." (Doc. 106, Pg. ID 5214.) If Plaintiffs are found to be non-exempt employees, then presumably Plaintiffs will have to make the further showing that they would have been entitled to the benefits under the policy. In that case, this policy may be relevant for determining

4

any backpay to which they may be entitled. Since a potential ground exists for the admissibility of this evidence, the Court will reserve ruling until trial. *United States ex rel. Griffith v. Conn*, No. CV 11-157-ART, 2016 WL 81765, at *3 (E.D. Ky. Jan. 7, 2016).

None of Kroger's Rule 403 arguments are persuasive. To the extent there is any confusion as to the voluntariness of the policy under the FLSA, that can be easily clarified through an appropriate instruction. Kroger identifies no unfair prejudice. Simply, if the jury decides that Plaintiffs do not fall under the administrative exemption, Kroger's policy may be relevant for determining damages. Any potential confusion does not outweigh the probative value of the policy on the issue of damages.

Because there are potential grounds under which the evidence of the policy may come in, the Court will not exclude this evidence at this stage. *See Bouchard*, 213 F. Supp. 2d at 810. Accordingly, the Court **DENIES** Defendants' motion in limine as it relates to the internal vacation and holiday time policy.

### C. Evidence of workplace misconduct

Plaintiffs argue that evidence of performance issues or misconduct should be excluded. This body of evidence includes warnings issued to employees related to various issues, such as discourteousness and tardiness; termination forms; and notes pertaining to productivity issues. Defendants argue that this evidence is relevant, not prejudicial, and may be admitted to show motive or bias.

The Court fails to see any possible relevance the termination forms have to the case. They do not explain the employees' job duties. They just reflect that certain employees were involuntarily discharged. Likewise, the warnings do not describe the

employees' affirmative duties—which is the issue to be examined by the jury at trial. Rather, the warnings describe episodes of misbehavior that are not relevant to the issues for trial and risk unfairly prejudicing the plaintiff employees. *How* they performed their job duties is not the issue for trial; *what* their job duties are is what the jury will consider. The only material here that is arguably relevant is an email criticizing some of the independent decisions one of the employees was making regarding her workflow (DX-1024).

Even so, this body of evidence comes with the danger of causing unfair prejudice to Plaintiffs. The evidence risks distracting the factfinders from determining whether the employees were entitled to overtime pay and leading them to think that the employees' job performance, if poor, somehow disentitles them to overtime compensation under the FLSA.

Accordingly, the risk of unfair prejudice substantially outweighs any minimal probative value this evidence has. At this point, the Court will only exclude the evidence that Plaintiffs specifically identified: DX-1023 through DX-1026; DX-1031; DX-1032; DX-1038; and DX-1040. The Court **GRANTS** Plaintiffs' motion in limine with respect to those specific exhibits.

### D. Evidence of Plaintiff Hardesty's wrongful termination lawsuit and conduct in furtherance of that lawsuit

Plaintiffs argue that evidence of Plaintiff Hardesty's separate individual lawsuit against Kroger, and conduct related to that lawsuit, should be excluded (Doc. 102). Kroger argues that evidence of Hardesty's lawsuit is relevant because it shows a bias

against Kroger and a motive to sue Kroger in this FLSA action.

Recall that the jury's focus will be whether Defendants are liable for failing to pay Plaintiffs overtime. Evidence of Hardesty's unrelated lawsuit has no tendency to make it more or less probable that Kroger did, indeed, fail to pay overtime. *See* Fed. R. Evid. 401(a). That is separate, individual litigation, raising different claims. This case's claims have to do with a right to overtime compensation, not wrongful termination, and involve not one but 27 individuals. Hardesty's separate lawsuit, and his conduct related to it, simply have no bearing on this case. The same goes for his ability to contact other employees, an argument Defendants make—his ability to contact other employees has nothing to do with whether the nature of Plaintiffs' work does or does not fall within the administrative exemption. Furthermore, any slight probative value it has is substantially outweighed by unfair prejudice to him. Admission of that evidence may confuse the issues and cast Hardesty in an unfairly prejudicial light as a disgruntled employee stirring up litigation out of spite.

For these reasons, the Court **GRANTS** in its entirety Plaintiffs' motion in limine concerning Hardesty's wrongful termination lawsuit and related conduct and communications, including DX-1030. (Doc. 102.)

### E. Documents produced three years after discovery cutoff

Plaintiffs argue that Defendants' Exhibits DX-1044 through DX-1055 should be excluded under Fed. R. Civ. P. 37(c)(1), as well as any testimony related to those exhibits. The exhibits are performance evaluations for certain members of the collective from 2015 to 2016. They were allegedly not produced until February 21, 2022, three years after the

Court's discovery deadline and three weeks before trial.

Plaintiffs make two arguments. First, Fed. R. Civ. P. 37(c)(1) requires exclusion. Second, that the performance evaluations are irrelevant and prejudicial under Fed. R. Evid. 401 and 403. Because the Court finds the Rule 37 argument dispositive, it does not reach the evidentiary argument.

Rule 37(c)(1) provides that, if a party fails to provide information as required by Rule 26, that party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37 exists to enforce discovery rules and orders and prevent abuse by future litigants. *Vance, By & Through Hammons v. United States*, 182 F.3d 920 (6th Cir. 1999). Too much leniency rewards untimely production of evidence. *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART-EBA, 2016 WL 5867496, at *11 (E.D. Ky. Oct. 6, 2016). Exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1), unless non-disclosure was substantially justified or harmless. *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) (citation omitted). When determining whether a party's late disclosure is "substantially justified" or "harmless," courts consider the following five factors:

(1) the surprise to the party against whom the evidence would be offered;

(2) the ability of that party to cure the surprise;

(3) the extent to which allowing the evidence would disrupt the trial;

(4) the importance of the evidence; and

(5) the nondisclosing party's explanation for its failure to disclose the evidence.

8

*Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015).  "District courts have broad discretion in applying these factors and need not apply each one rigidly. The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citations omitted).

On balance, the Court finds that the factors favor Plaintiffs.

***Surprise***.  Plaintiffs claim that they were surprised by the over-100 pages worth of performance reviews.  Defendants argue that, because the opt-in plaintiffs themselves wrote much of the substance of the evaluations, they cannot claim surprise.  Defendants also assure the Court that at trial they will only use the comments Plaintiffs drafted.  (Doc. 108, Pg. ID 5225.)  They also claim that most of the employees had access to these evaluations through Kroger's online employee portal.  (Schiff Dec., Doc. 108-1, ¶¶ 2-3.)

This factor tips slightly in Plaintiffs' favor.  On the one hand, Plaintiffs at the very least knew these evaluations existed.  And it is reasonable that many Plaintiffs would have had access to them through the online employee portal.  The Sixth Circuit has affirmed that plaintiffs cannot claim surprise when they have already received or acknowledged offer letters during a hiring process. *Bisig*, 940 F.3d at 220.  Similarly here, Plaintiffs authored significant portions of the evaluations themselves, so they cannot claim absolute surprise.  On the other hand, Defendants *maintained* access to these evaluations.  And yet they did not submit them until very recently.  By contrast, in *Bisig*, the defendant had at least produced screenshots of the subject material to the plaintiffs a

9

year earlier. That is the critical distinction between *Bisig*'s first factor and this case. Here, there is no indication that Defendants produced any part of the evaluations until recently. On balance, therefore, the surprise factor favors Plaintiffs.

*Ability to cure and disruption to trial*. Plaintiffs argue that they have little to no opportunity to analyze the performance evaluations and no opportunity to conduct discovery. For this reason, it disrupts their trial preparation. Defendants claim they can cure any alleged surprise through cross-examination. *See Howe*, 801 F.3d at 749.

The Sixth Circuit has recognized that "the ability to cross-examine witnesses about late disclosures during trial both provided an opportunity to remedy surprise and minimized impact on the trial." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019). But it noted in the next breath that the ability to cure a late disclosure on cross-examination is cold comfort, "not pulling clearly in favor of or against" excluding the late disclosure. *Id.* Moreover, because this is a collective action involving numerous plaintiffs, the difficulty remedying the tardiness and the disruption to trial preparation is heightened.

Upon consideration, then, the second and third factors tip in favor of Plaintiffs.

*Importance*. Plaintiffs contend that the issue for trial involves the day-to-day job duties Plaintiffs performed — not management's reviews of their performance. As such, the evaluations are not important. Defendants disagree, maintaining that the evaluations shed light on the overarching issue of the case: whether the collective members are exempt from overtime because of the nature of their job duties.

On this factor, the more important the proof, "the greater the effect of preclusion,

10

but also the greater the harm in tardy disclosure." *Bisig*, 940 F.3d at 220.  And, here, the Court appreciates that the evaluations have some importance—they do shed light on some of the duties Plaintiffs performed.  But if, as Defendants insist, the evaluations really are "crucial," this only serves to increase the harm in tardy disclosure.  *Id.*  Regardless, Plaintiffs' position countervails Defendants' argument—Plaintiffs represent that there will be live testimony and documentary evidence on the subject of Plaintiffs' job duties. So, although these evaluations may have some importance, they are not essential to the case and, if they were, that just aggravates the harm.  On balance, the Court finds that this factor comes out neutral.

   ***Non-disclosing party's explanation***.  Plaintiffs argue that Defendants' explanation for their tardiness—oversight—is unjustifiable.  "Otherwise, any party could have an 'oversight' and then produce a document to the opposing party weeks before trial." (Doc. 105, Pg. ID 5184.)  Defendants claim the late disclosure was due to negligence and confusion on the parts of both Plaintiffs and Defendants.

   Although there is no sign that Defendants engaged in gamesmanship regarding the performance evaluations, the fact remains that they had them in their possession since discovery began, yet did not turn them over until a few weeks ago.  This, despite substantial production of other evidence and at least two extensions of the discovery deadline.  (*See* 10/18/2017 Notation Order; 12/28/18 Minute Entry.)  In this light, this factor tips slightly in favor of Plaintiffs.

   Based on the Court's consideration of the five factors above, the Court finds that Defendants' failure to disclose the performance evaluations was not substantially

11

justified or harmless. *See EQT Prod. Co.*, 768 F. App'x at 470; *Johnson v. United Parcel Serv., Inc.*, 236 F.R.D. 376, 378 (E.D. Tenn. 2006) (defendant's failure to disclose was not harmless when disclosure came two weeks before trial).

### III.    Conclusion

For the reasons above, the Court rules as follows:

(1) The Court **GRANTS** Defendants' motion in limine on the issue of the reclassification of CoRE recruiters in December 2016.

(2) The Court **DENIES** Defendants' motion in limine on the issue of Defendants' vacation and holiday time policy.

(3) The Court **GRANTS** Plaintiffs' motion in limine (Doc. 100) to exclude the following Defendants' Exhibits: DX-1023, DX-1024, DX-1025, DX-1026, DX-1031, DX-1032, DX-1038, and DX-1040.

(4) The Court **GRANTS** Plaintiffs' motion in limine (Doc. 102) to exclude evidence of Plaintiff Hardesty's wrongful termination lawsuit and conduct in furtherance of that lawsuit, including DX-1030.

(5) The Court **GRANTS** Plaintiffs' motion in limine (Doc. 105) to exclude the tardily-disclosed performance evaluations found in Defendants' Exhibits DX-1044 through DX-1055 and any testimony related to them.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND